BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
GAVIN L. GREENE (Cal. Bar No. 230807)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805 / -4600
    E-mail: Paul.Green@usdoj.gov
          Gavin.Greene@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>MICHELLE BAASS, Director, California Department of Health Care Services,<br><br>Respondent. | No. 2:25-mc-00083<br><br>**UNITED STATES OF AMERICA'S PETITION TO ENFORCE HSI ADMINISTRATIVE SUBPOENA NO. HSI-LA-2025-063746-001 TO MICHELLE BAASS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Supporting Declaration and Proposed Order filed concurrently] |
|---|---|

    1.    The United States of America respectfully petitions this Court to enforce Department of Homeland Security Subpoena No. HSI-LA-2025-063746-001, which was issued to Michelle Baass, Director of the California Department of Health Care Services on June 10, 2025. The Subpoena, issued under the authority set forth in 8 U.S.C. § 1225(d)(4) and 8 C.F.R. § 287.4(c), seeks any application for Medi-Cal benefits submitted between June 5, 2021 and the present, where the applicant did not affirm that they have satisfactory immigration status.

2. Doctors and hospitals are required to provide emergency medical services to anyone in California, regardless of their immigration status. The cost of providing that emergency service for individuals that cannot otherwise pay is covered by Medi-Cal, which is then reimbursed by the federal government. However, the cost of non-emergency medical care for individuals who are illegally in the United States is not eligible for reimbursement by Medi-Cal.

3. The Department of Homeland Security (DHS), Homeland Security Investigations (HSI) is investigating whether the California Department of Health Care Services is reimbursing doctors and hospitals for the costs of non-emergency medical services provided to individuals who do not have satisfactory immigration status and are therefore ineligible to receive such non-emergency health services under Medi-Cal.

4. On June 10, 2025 HSI served the Subpoena to obtain information relevant to that pending investigation which is within the authority of the DHS, of which HSI is a subcomponent. Respondent has not complied with the Subpoena.

5. The Subpoena is enforceable because it is within HSI's statutory authority, it is not too indefinite, it is not unduly burdensome, and it seeks information reasonably relevant to HSI's inquiry. *See* 8 U.S.C. § 1225(d)(4)(A), (B). The United States therefore respectfully requests that the Court enforce the Subpoena against Respondent.

6. Filed concurrently herewith are the United States' Memorandum of Points and Authorities in support of this Petition, the Declaration of Eddy Wang, Special Agent in Charge (SAC) of the Los Angeles Office of the Special Agent in Charge (HSI Los Angeles), a copy of HSI Subpoena No. HSI-LA-2025-063746-001, Respondent's objection to the Subpoena, and a Proposed Order to Show Cause compelling Respondent to comply with the Subpoena.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this Petition under 28 U.S.C. §§ 1331, 1345, and 8 U.S.C. § 1225(d)(4)(B), which allows a subpoena enforcement action to be filed in "[a]ny United States district court within the jurisdiction of which

investigations or inquiries are being conducted by an immigration officer."

8. Venue is proper in this district under 8 U.S.C. § 1225(d)(4)(B) because HSI is conducting its investigation within its jurisdiction. *See* 28 U.S.C. § 1391(b); *N.L.R.B. v. Line*, 50 F.3d 311, 314 (5th Cir. 1995) ("Every court that has addressed the subpoena enforcement provisions for … federal agencies [with similar statutes] … Has concluded that venue and jurisdiction are synonymous for these statutes.").

## THE HSI SUBPOENA

9. The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

10. Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat. 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration.

11. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

12. HSI is responsible for a wide array of activities related to the enforcement of immigration and customs laws. HSI's immigration enforcement responsibilities include civil and criminal investigations of illegal aliens present in the United States, those that traffic or smuggle illegal aliens, and those that illegally facilitate the presence of illegal aliens in the United States. *See* Wang Decl. ¶ 2.

13. President Trump has issued several executive orders establishing new immigration enforcement policies for the federal government. For example, Executive Order 14159, § 2, "Protecting the American People Against Invasion," 90 Fed. Reg.

8443 (Jan. 20, 2025),[1] directs federal agencies "to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people." This includes "removing promptly all aliens who enter or remain in violation of Federal law." *See* Executive Order 14165 "Securing Our Borders," § 2(d), 90 Fed. Reg. 8467 (Jan. 20, 2025).[2] Moreover, the President directed the Secretary of Homeland Security to ensure that "the primary mission of [HSI] is the enforcement of the provisions of the INA and other Federal laws related to the illegal entry and unlawful presence of aliens in the United States." E.O. 14159 § 4. Since the issuance of these executive orders, HSI has been diligently implementing the President's immigration enforcement policies, including civil immigration enforcement actions against aliens with criminal histories.

14. As discussed in the United States' Memorandum of Points and Authorities, HSI has initiated an investigation into violations of the immigration laws, specifically: (1) the presence of illegal aliens residing within the Central District of California and (2) Respondent's facilitation of violations of immigration laws by providing services to individuals who do not have lawful immigration status. 8 U.S.C. § 1324(a)(1)(A)(iv).

15. Section 8 U.S.C. § 1225(d)(4)(A) empowers the Attorney General and "any immigration officer" to "require by subpoena … the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of [the INA]…." It further provides that the immigration officer "may invoke the aid of any court of the United States" to enforce the subpoena. *Id.*

16. Section 8 U.S.C. § 1225(d)(4) also specifies that "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being

---

[1] *Available at* https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-american-people-against-invasion/.

[2] *Available at* https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/.

4

conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued" under that authority "issue an order requiring such persons to … produce books, papers, and documents if demanded." *Id.* § 1225(d)(4)(B). A "failure to obey such order of the court may be punished by the court as a contempt thereof." *Id.*

17. On June 10, 2025, HSI Supervisory Special Agent Jesus Quezada executed Subpoena No. HSI-LA-2025-063746-001, under the authority set forth in 8 U.S.C. § 1225(d)(4) and 8 C.F.R. § 287.4(c). Decl. ¶¶ 3-4. A copy of the Subpoena and Respondent's objection are attached hereto as Exhibits A and B to the Wang Declaration. Respondent has not complied with the Subpoena. Wang Decl. ¶ 7.

## PRAYER FOR RELIEF

18. For the reasons set forth herein and in the United States' Memorandum of Points and Authorities in support of this petition, the United States respectfully requests that this Court enter an order compelling Respondent to produce all withheld and responsive documents requested.

Dated: August 19, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

  */s/ Paul (Bart) Green*
PAUL (BART) GREEN
GAVIN L. GREENE
Assistant United States Attorneys

Attorneys for Petitioner
United States of America

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Supreme Court has held that an administrative subpoena "is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also McLane v. EEOC*, 581 U.S. 72, 77 (2017) (holding that if the information sought by an administrative subpoena is relevant to the agency's inquiry, "the district court should enforce the subpoena" unless the subpoena "is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome"). Although a Fourth Amendment reasonableness inquiry must also be satisfied, an administrative subpoena is consistent with the Fourth Amendment if the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113, 1116 (9th Cir. 2012) (quoting *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946)). "The scope of judicial review in an administrative subpoena enforcement proceeding is 'quite narrow.'" *Id.* at 1113.

HSI's issuance of the Subpoena was within the broad statutory authority of DHS to investigate matters relating to the privilege of *any* person to reside in the United States or concerning *any* matter which is material and relevant to the enforcement of the INA. Additionally, the demand in the Subpoena was "not too indefinite," as it sought applications for Medi-Cal reimbursement submitted within a specific timeframe where the applicant did not answer "yes" to a specific question. Finally, the documents sought are unquestionably relevant to HSI's investigation. Through the information sought in the Subpoena, DHS seeks to determine whether the California Department of Health Care Services, through its director, is providing payments to providers for non-emergency medical care for individuals with unsatisfactory immigration status, thereby inducing illegal aliens to remain in the country unlawfully. *Morton Salt*, 338 U.S. at 652. Furthermore, the names of these individuals may be relevant to prove violations of 8

U.S.C. §§ 1325 and 1326.

II.  ARGUMENT

    A.  HSI had the authority to issue the Subpoena.

The Supreme Court has recognized that the administrative subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative, but is instead a power "to inquire." *United States v. Clarke*, 572 U.S. 248, 254 (2014); *United States v. Powell*, 379 U.S. 48, 57 (1964) (discussing other agencies' administrative subpoena powers as a "power of inquisition"). Indeed, the Supreme Court has analogized agencies' administrative subpoena powers to the Grand Jury, "which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43.

The INA broadly grants the Attorney General and any immigration officer the "power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service…." 8 U.S.C. § 1225(d)(4)(A). The Supreme Court has construed that provision, as it appeared in a predecessor statute, as providing ICE with the authority to demand documents not only relating to aliens entering the United States, but on matters "encompass[ing] the full range of subjects covered by the [Immigration and Nationality Act of 1952]." *United States v. Minker*, 350 U.S. 179, 185-86 (1956). The subpoena power encompasses both civil and criminal proceedings since both are part of the INA. *See Peters v. United States*, 853 F.2d 692, 695 (9th Cir. 1988).

Here, HSI is investigating violations of immigration laws and the subpoena has been issued in support of that investigation. Specifically: (1) the presence of individuals illegally in the United States who are violating the immigration laws and (2) whether the California Department of Health Care Services, its Director, and employees continue to

7

knowingly and willfully facilitate the provision of nonemergency medical care to noncitizens with unsatisfactory immigration status through California's Medicaid program, thereby inducing such aliens to remain in the United States unlawfully. Wang Decl. ¶¶ 3, 5; 8 U.S.C. § 1324(a)(1)(A)(iv). Sections 1325 and 1326 impose criminal penalties on individuals who have illegally entered the United States. Section 1324(a)(1)(A)(iv) imposes criminal penalties on any person who encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law. This type of enforcement falls squarely within the broad scope of inquiry authorized in § 1225(d)(4)(A).

### B. The demand in the Subpoena was not too indefinite or unduly burdensome.

The second element of *Morton Salt* is similarly met because the Subpoena is not "too indefinite." The definiteness requirement ensures that the records sought can be identified by their description in the subpoena and are narrow and specific. *See Golden Valley*, 689 F.3d at 1115. Where the investigation "is authorized by law and the materials sought are relevant to the inquiry, that burden [by the defendant to show the subpoena is too indefinite] is not easily met." *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973).

In *Peters v. United States*, 853 F.2d 692 (9th Cir. 1988), the Ninth Circuit quashed an immigration subpoena directed to the manager of a labor camp that sought records related to any unnamed undocumented aliens living there. *Id.* at 694. The Court reasoned that the INA does not authorize the agency to serve so-called "John Doe" subpoenas "where the targets of a general investigation are unknown…." *Id.* at 700. The United States respectfully submits that *Peters* does not foreclose the government's request in the underlying Subpoena.

In concluding that the INA did not authorize the issuance of the John Doe subpoena to the manager of the labor camp, *Peters* reasoned that the authority of an

agency to issue subpoenas for investigatory purposes is created solely by statute, and that the Supreme Court had only allowed the enforcement of an IRS John Doe subpoena after finding that the authority to do so was rooted in the language and policies of the tax code. *Peters*, 853 F.2d at 696 (citing *United States v. Bisceglia*, 420 U.S. 141 (1975)). But in *Bisceglia*, the Supreme Court noted that section 7602 of the IRS code authorized "the summoning of 'any … person' for the taking of testimony and examination of books which may be relevant for 'ascertaining the correctness of any return, … determining the liability of any person … or collecting any such liability ….'" *Bisceglia*, 420 U.S. at 149 (quoting 26 U.S.C. § 7602). And in prefacing its analysis of why the IRS's summons power authorized the John Doe subpoena, the Supreme Court opined that "[p]lainly, this language is inconsistent with an interpretation that would limit the issuance of summonses to investigations which have already focused upon a particular return, a particular named person, or a particular potential tax liability." *Id.* So too here.

      Other than the obvious distinction of arising in the immigration context rather than the tax context, the INA's express summons authority is not meaningfully different from the provision of the tax code the Supreme Court examined in authorizing the enforcement of the John Doe subpoena presented in *Bisceglia*. Just as section 7602 of the tax code authorized the summons of "*any* … person" for the taking of testimony and examination of books which may be relevant for "ascertaining the correctness of *any* return, … determining the liability of *any* person … or collecting *any* such liability," 26 U.S.C. § 7602 (emphasis added), so too did then-section 1225(a) of the INA expressly authorize the summons of documents "relating to the privilege of *any* person to enter, reenter, reside in, or pass through the United States or concerning *any* matter which is material and relevant to the enforcement of this chapter and the administration of the Service…." 8 U.S.C. 1225(a) (emphasis added). *Peters*' reliance on the IRS code's current requirement for judicial approval prior to serving John Doe subpoenas is also of no moment, *Peters*, 853 F.2d at 697, as Congress had not yet enacted that statutory

9

provision at the time the Supreme Court authorized the John Doe subpoena at issue in *Bisceglia*.

The government submits that aside from being wrongly decided, *Peters* is further inapplicable to the extent that HSI's subpoena is in furtherance of a criminal investigation into the administrator of the Medi-Cal program rather than just a group of unknown targets. *See also* Ex. B (subpoena response asserting a single objection based on *Peters*). Accordingly, the second *Morton Salt* element is satisfied because HSI seeks Medi-Cal applications submitted within a discrete period (June 5, 2021 – present) in which the applicant did not answer "yes" to a single question on the application ("Does this person have satisfactory immigration status?"). The request is sufficiently specific so as not to require time intensive or complex judgments regarding potential responsiveness. Instead, Respondent need only confirm the date of the application and the response to that single question to determine whether the application is responsive to the Subpoena.

HSI's Subpoena is more analogous to an administrative subpoena issued by the Drug Enforcement Administration which the Ninth Circuit deemed to be sufficiently narrow and properly issued. In *Golden Valley*, a case decided 24 years after *Peters*, the DEA issued an administrative subpoena ordering an electricity cooperative to provide company records pertaining to electricity consumption at three specified customer addresses. 689 F.3d at 1111. Those records included customer names, addresses, telephone numbers, account information, method of payment, and the dates electricity service was initiated and terminated during a defined period. *Id.* Rejecting the Golden Valley respondent's efforts to characterize the subpoena as the purportedly impermissible "John Doe" subpoena at issue in *Peters*, the Ninth Circuit cited the DEA's declaration attesting to the agent's suspicion "that individuals at these residences may be involved in the manufacture and distribution of controlled substances." *Id.* at 1115. The Court reasoned that the subpoena was sufficiently specific because the requested information related to customer information at only these specified residences, despite

that the individuals were not previously identified. *Id.* Likewise, here, the United States seeks a targeted set of documents as part of its investigation into the administrator of the Medi-Cal program. *See United States v. Picetti*, 2019 WL 1895057, at *5 (E.D. Cal. Apr. 29, 2019), report and recommendation adopted, 2019 WL 13458271 (E.D. Cal. Sept. 26, 2019) (granting petition to enforce and stating that "the overall 'reasonableness' of DOJ's investigation is not subject to judicial review in this context."). And like the subpoena authority set forth in the INA, the Comprehensive Drug Abuse Prevention and Control Act of 1970 examined in *Golden Valley* authorizes the Attorney General to issue administrative subpoenas to "require the production of *any* records … which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a) (emphasis added).

The United States submits that *Peters* does not foreclose the relief requested because the HSI subpoena is consistent with both the Supreme Court's decision in *Bisceglia* and the Ninth Circuit's post-*Peters* decision in *Golden Valley*. However, should the Court deem otherwise, the government preserves its objection for purposes of appeal.

### C. The documents sought in the Subpoena are reasonably relevant to HSI's investigation.

"Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *Golden Valley*, 689 F.3d at 1113. Relevance is broadly construed when enforcing administrative subpoenas, *see F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977), and "[t]he relevance requirement is 'not especially constraining.'" *Golden Valley*, 689 F.3d at 1113 (quoting *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2009)). "[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (internal quotation marks omitted). Moreover, this Court has found that "[i]n defining relevance, courts generally defer to the agency's appraisal of relevancy, which must be

11

accepted so long as it is not obviously wrong." *NLRB v. Kava Holdings, Inc.*, 2017 WL 3841780, at *3 (C.D. Cal. Aug. 8, 2017), report and recommendation adopted, 2017 WL 3841797 (C.D. Cal. Aug. 31, 2017). Courts must also be careful to not use a subpoena enforcement proceeding to "test the strength of the underlying complaint." *See McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017).

The Subpoena seeks applications for Medi-Cal benefits where the applicant did not answer yes to the question: "Does this person have satisfactory immigration status?" If an applicant answers no to that question and Respondent still facilitated the provision of medical care and sought federal reimbursement for such services, then that is relevant to whether Respondent knowingly and willfully induced illegal aliens to remain in the country unlawfully under section 1324. *See* Decl. ¶¶ 3, 5. The information sought in the subpoena is relevant to other possible violations of the INA as well. Any applications where an individual residing in California stated that they do not have satisfactory immigration status may help to prove violations of Sections 1325 and 1326 of the INA, which requires the government to establish, among other things, that the defendant is an alien and is present in the United States without authorization. *See* Decl. ¶ 5.

Respondent will likely argue that information relating to individual applicants is not relevant, but the Ninth Circuit has already rejected a similar argument. In *Golden Valley*, the Court explained that "[t]his information may or may not turn out to be incriminating, but it is clearly relevant to an investigation of a possible violation of the [] laws." 689 F.3d at 1114. Here, in addition to violations of §§ 1325 and 1326, the information sought through the Subpoena is relevant to the determination of whether Respondent induced illegal aliens to remain in the United States by facilitating their access to non-emergency medical care under Medi-Cal to which they were not legally entitled by virtue of their unsatisfactory immigration status. *See* Decl. ¶¶ 3, 5.

## III. CONCLUSION

For the above reasons, the United States respectfully requests that the Court grant its petition and issue an order directing Respondent to show cause why HSI's Subpoena should not be enforced.

Dated: August 19, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

　 */s/ Paul (Bart) Green*
PAUL (BART) GREEN
GAVIN L. GREENE
Assistant United States Attorneys

Attorneys for Petitioner
United States of America