| | |
|---|---|
| 1 | BILAL A. ESSAYLI<br>Acting United States Attorney |
| 2 | DAVID M. HARRIS<br>Assistant United States Attorney |
| 3 | Chief, Civil Division<br>DANIEL A. BECK |
| 4 | Assistant United States Attorney<br>Chief, Complex and Defensive Litigation Section |
| 5 | PAUL (BART) GREEN (Cal. Bar No. 300847)<br>GAVIN L. GREENE (Cal. Bar No. 230807) |
| 6 | Assistant United States Attorneys<br>    Federal Building, Suite 7516 |
| 7 |     300 North Los Angeles Street<br>    Los Angeles, California 90012 |
| 8 |     Telephone: (213) 894-0805 / -4600<br>    E-mail: Paul.Green@usdoj.gov |
| 9 |         Gavin.Greene@usdoj.gov |
| 10 | Attorneys for Petitioner<br>United States of America |

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Petitioner,<br><br>    v.<br><br>MICHELLE BAASS, Director,<br>California Department of Health Care Services,<br><br>            Respondent. | No. 2:25-mc-00083-JLS-SSC<br><br>**UNITED STATES' REPLY IN SUPPORT OF PETITION TO ENFORCE HSI ADMINISTRATIVE SUBPOENA**<br><br>Hearing Date:  October 16, 2025<br>Hearing Time:  11:00 a.m.<br>Location:      Roybal Fed. Building<br>               255 East Temple Street,<br>               Courtroom 790,<br>               Los Angeles, CA 90012<br><br>Honorable Stephanie Christensen |

**TABLE OF CONTENTS**

DESCRIPTION                                                                                      PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

REPLY MEMORANDUM ................................................................................................... 1

I.   INTRODUCTION ..................................................................................................... 1

II.  LEGAL STANDARD ................................................................................................ 1

III. ARGUMENT ............................................................................................................. 2

    A.  Respondent Waived Any Objections Not Made In Response To The Subpoena ........................................................................................................ 2

    B.  HSI Has The Authority To Issue The Subpoena ........................................... 3

    C.  The Subpoena Is Not Too Indefinite Or Unduly Burdensome ...................... 5

    D.  *Peters* Was Wrongly Decided But Is Distinguishable In Any Event .......... 5

    E.  The Subpoena Seeks Documents Which Are Reasonably Relevant To HSI's Investigation ........................................................................................ 7

    F.  Respondent's Other Arguments Fail ............................................................ 10

IV.  CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**Cases**

*Ace Black Ranches, LLP v. United States Env't Prot. Agency*,
 583 F. Supp. 3d 1313 (D. Idaho 2022) .................................................................. 11

*Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*,
 2023 WL 2347387 (C.D. Cal. Feb. 13, 2023) ......................................................... 2

*Bennett v. Spear*,
 520 U.S. 154 (1997) .............................................................................................. 10

*California v. U.S. Dep't of Health & Hum. Servs.*,
 2025 WL 2356224 (N.D. Cal. Aug. 12, 2025) ...................................................... 10

*Couch v. United States*,
 409 U.S. 322 (1973) ................................................................................................ 7

*CVS Health Corp. v. Vividus, LLC*,
 878 F.3d 703 (9th Cir. 2017) .................................................................................. 3

*EEOC v. Fed. Express Corp.*,
 558 F.3d 842 (9th Cir. 2009) .................................................................................. 1

*EEOC v. Karuk Tribe Hous. Auth.*,
 260 F.3d 1071 (9th Cir. 2001) ................................................................................ 1

*Gallo Cattle Co. v. U.S. Dep't of Agric.*,
 159 F.3d 1194 (9th Cir. 1998) .............................................................................. 10

*Hall v. Marriott Int'l, Inc.*,
 2021 WL 1906464 (S.D. Cal. May 12, 2021) ........................................................ 2

*Lamie v. U.S. Trustee*,
 540 U.S. 526 (2004) ................................................................................................ 3

*L.R.B. v. Am. Med. Response, Inc.*,
 438 F.3d 188 (2d Cir. 2006) ................................................................................... 7

*McLane v. EEOC*,
 581 U.S. 72 (2017) .................................................................................................. 1

*NLRB v. Kava Holdings, Inc.*,
 2017 WL 3841780 (C.D. Cal. Aug. 8, 2017) ......................................................... 7

*Peters v. United States*,
 853 F.2d 692 (9th Cir. 1988) .......................................................................... 2, 5, 6

*Return Mail, Inc. v. U.S. Postal Serv.*,
 587 U.S. 618 (2019) ................................................................................................ 4

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
 878 F.2d 875 (5th Cir. 1989) .................................................................................. 7

*Su v. Starbucks Corp.*,
    697 F. Supp. 3d 1078 (W.D. Wash. 2023) ............................................................. 1-2, 7

*Tabet v. U.S. S.E.C.*,
    2012 WL 3986656 (S.D. Cal. Sept. 11, 2012) ............................................................. 8

*United States v. Bisceglia*,
    420 U.S. 141 (1975) ................................................................................................ 5, 6

*United States v. Minker*,
    350 U.S. 179 (1956) ..................................................................................................... 6

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) ..................................................................................................... 1

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    569 F. Supp. 3d 626 (E.D. Mich. 2021) ........................................................................ 5

**Statutes**

5 U.S.C. § 704 ................................................................................................................. 10

8 U.S.C. § 1101 ........................................................................................................... 3, 4, 7

8 U.S.C. § 1225 ........................................................................................................... 1, 3, 6

8 U.S.C. § 1644 ................................................................................................................... 5

**REPLY MEMORANDUM**

I. **INTRODUCTION**

On August 19, 2025, the United States filed the Petition to Enforce a Department of Homeland Security Subpoena served on Michelle Baass ("Respondent"), the Director of the California Department of Health Care Services ("DHCS") on June 10, 2025. The Subpoena was served as part of an investigation into whether DHCS, through Respondent, is providing payments to providers for federally funded nonemergency medical care for individuals with unsatisfactory immigration status, thereby inducing illegal aliens to remain in the country unlawfully.

In her Opposition to the Petition, Dkt. 9, Respondent does not dispute that she did not comply with the Subpoena. Instead, she generally asserts that the Subpoena is not within DHS's statutory authority, is too indefinite and unduly burdensome, and does not seek information reasonably relevant to DHS's inquiry. *See* 8 U.S.C. § 1225(d)(4)(A), (B). However, as shown in the Petition and as set forth below, the United States has met its burden, and the Subpoena should be enforced.

II. **LEGAL STANDARD**

In an agency subpoena enforcement action, a district court's inquiry is limited to whether the "inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also McLane v. EEOC*, 581 U.S. 72, 77 (2017). "[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (cleaned up). The Court's inquiry is narrow because judicial review of the early phases of an investigation interferes with the proper functioning of investigations and delays resolving the ultimate question of whether the law has been violated. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848-49 (9th Cir. 2009); *see also Su v. Starbucks Corp.*, 697 F. Supp. 3d 1078, 1085 (W.D. Wash. 2023) (granting petition to enforce

administrative subpoena after finding that the government demonstrated it had the authority to investigate, and that the information was relevant and material to the investigation).

## III. ARGUMENT

### A. Respondent Waived Any Objections Not Made In Response To The Subpoena

As an initial matter, Respondent raises a series of objections for the first time in her Opposition that were not made in response to the Subpoena. Those untimely objections have been waived. Under the Federal Rules of Civil Procedure, "objections not timely raised in a written response to discovery may not be raised for the first time in a later discovery motion." *Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*, 2023 WL 2347387, at *3 (C.D. Cal. Feb. 13, 2023) (M.J. Early) (citing cases). "When a party raises an objection to a discovery request for the first time in an opposition to a motion to compel, that objection is waived, unless good cause exists to excuse the objection's untimeliness." *Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) (cleaned up) (citing cases).

Here, Respondent replied to the Subpoena with one email asserting a single objection based on *Peters v. United States*, 853 F.2d 692 (9th Cir. 1988). *See* Dkt. 1-1, Ex. B. Now, for the first time in her Opposition to the Petition, Respondent raises a host of objections not previously asserted. For example, Respondent claims that enforcing the Subpoena would somehow lead to "increased morbidity and mortality, adverse effects during pregnancy, and increased spread of communicable diseases" within California. Opp'n at 8. Surely, if those objections had merit, Respondent would have vigorously asserted them in responding to the Subpoena. She did not.

Respondent similarly makes no argument that good cause exists for the Court to consider her untimely objections. But even if the Court were to consider them, they should be rejected for the reasons discussed below.

**B.     HSI Has The Authority To Issue The Subpoena**

8 U.S.C. § 1225(d)(4)(A) empowers "any immigration officer" to subpoena "the production of books, papers, and documents … concerning *any* matter which is material and relevant to the enforcement of [the INA]…." (emphasis added). And in her Opposition, Respondent agrees that DHS's power under 8 U.S.C. § 1225(d)(4)(A) to issue administrative subpoenas is "admittedly broad." Opp'n at 16-17.

Respondent, however, argues that DHS's subpoena power does not extend to DHCS because DHCS is not a "person" as defined by the statute. Respondent's position is both factually and legally flawed. The Subpoena was issued to Director Baass, not DHCS. Likewise, this enforcement action was brought against Director Bass, the Respondent in this action. *See* Dkt. 1, Petition. Respondent is being investigated for knowingly and willfully facilitating the provision of federally funded benefits to individuals with unsatisfactory immigration status through California's Medicaid program. Regardless, even if DHCS is considered the recipient of the Subpoena, DHS has the authority to subpoena DHCS under the INA, which defines "person" as "an individual or organization." 8 U.S.C. § 1101(b)(1)(G)(3). "Organization" is in turn broadly defined by the INA to "mean[], but is not limited to, an *organization*, corporation, company, partnership, association, trust, foundation or fund; and includes *a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects*." 8 U.S.C. §§ 1101(a)(28), (a)(36) (emphasis added). Under the plain language of the statute, DHCS constitutes an organization as well as a "group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects." *See CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

In insisting that section 1324 applies only to "persons," not government entities, Respondent relies on a Second Circuit case which referenced the Supreme Court's "longstanding interpretive presumption" that "person" does not include government agencies. Opp'n at 19 (quoting *Kearns v. Cuomo*, 981 F.3d 200, 212 (2d Cir. 2020)). Aside from being nonbinding on this Court, *Kearns* cited the Supreme Court's decision in *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 626 (2019), in which the Court considered the question whether the Government is a "person" capable of petitioning for post-issuance review under the America Invents Act. In answering that question in the negative, the Court noted that the *patent* statutes do *not* define the term "person," and that "*[i]n the absence of an express statutory definition*, the Court applies a 'longstanding interpretive presumption that 'person' does not include the sovereign,' and thus excludes a federal agency like the Postal Service." *Id.* (emphasis added). But unlike the patent statutes at issue in *Return Mail*, the INA expressly defines "person" as "an individual *or organization*." 8 U.S.C. § 1101(b)(3) (emphasis added). Accordingly, Respondent's contention that she or DHCS cannot be prosecuted for a violation of section 1324 because DHCS is not a "person" lacks merit.[1]

Respondent next argues that the Subpoena violates the Tenth Amendment because the Subpoena purportedly requires California to "administer or enforce a federal regulatory program." Opp'n at 19-20. That argument is similarly based on a mischaracterization of the facts. The Subpoena seeks documents and information in furtherance of an investigation regarding potential violations of federal law. *See* Dkt. 1-1, Wang Decl. That the information may be used at a later point to enforce federal immigrations laws does not mean that the United States is commandeering the State.

---

[1] Although Respondent additionally relies on the INS's definition of "state" as indicative of DHCS being automatically removed from the categories of entities that could be a "person," the INS's definition of "state" simply clarifies that "[t]he term 'State' includes the District of Columbia, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands." 8 U.S.C. § 1101(a)(36). That clarification in no way suggests that DHCS is not an "organization" within the meaning of 8 U.S.C. § 1101(b)(1). DHCS is unquestionably an organization, albeit a public one.

Indeed, Congress contemplated that federal law enforcement agencies will solicit and rely on information provided by state and local governments to enforce federal immigration laws. *See* 8 U.S.C. § 1644 ("Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States."). Despite Respondent's insistence to the contrary, nothing prohibits the disclosure of such information here.

   **C.** **The Subpoena Is Not Too Indefinite Or Unduly Burdensome**

  Although Respondent attempts to characterize HSI's subpoena as an impermissible "fishing expedition," the Subpoena is narrowly tailored to HSI's investigation into whether Respondent knowingly and willfully facilitates the provision of federally funded health care benefits to individuals with unsatisfactory immigration status through California's Medicaid program. The Subpoena is not indefinite, as it sought applications for Medi-Cal reimbursement submitted within a specific timeframe where the applicant did not answer "yes" to a *single* question in a 26-page application. *See* Dkt. 9-1, Ex. A.

  The Subpoena is not unduly burdensome either. "[Respondent's] assertion that it has not budgeted for litigation is credible, but accepting its argument would suggest that public governmental entities are exempt from normal discovery obligations. They are not." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021). This is especially true in this instance, where Respondent has only offered generalized assertions that finding and reviewing the records would be burdensome.

   **D.** ***Peters* Was Wrongly Decided But Is Distinguishable In Any Event**

  Respondent is correct that, for the reasons set forth in the underlying Petition, the United States believes that *Peters v. United States*, 853 F.2d 692 (9th Cir. 1988), was wrongly decided. In arguing to the contrary, Respondent cites the concurring opinion in *United States v. Bisceglia*, 420 U.S. 141 (1975), in which Justice Blackmun noted that

5

the tax summons the Court upheld "was issued pursuant to a genuine investigation" and was "closely scrutinized and appropriately narrowed in scope by the United States District Court." *Id.* at 152 (Blackmun, J. concurring). But Respondent offers no evidence or meaningful argument that HSI's investigation is not "genuine." Nor can she, as the Attorney General and any immigration officer has broad authority to subpoena documents and testimony concerning *any* matter which is material to the enforcement of the immigration laws. 8 U.S.C. § 1225(d)(4)(A). *See also United States v. Minker*, 350 U.S. 179, 185-86 (1956) (acknowledging ICE's authority to demand documents not only relating to aliens entering the United States, but on matters "encompass[ing] the full range of subjects covered by the [Immigration and Nationality Act of 1952]."). As for Respondent's challenge to the scope of the Subpoena and the alleged burden of providing responsive documents, this Court may of course elect to narrow its scope as the district court did in *Bisceglia*. Regardless, *Peters* does not foreclose the requested relief because it is materially distinguishable from the Subpoena HSI seeks to enforce here.

  As described above, Respondent characterizes the Subpoena as a "fishing expedition" of the sort *Peters* rejected, focusing entirely on the thousands of potentially responsive applications. That contention ignores a key distinction between HSI's subpoena and the subpoena the Ninth Circuit rejected in *Peters*. In *Peters*, immigration authorities served a subpoena on the manager of a labor camp to obtain records related to any unnamed and undocumented aliens living there. *Peters*, 853 F.2d at 694. But notably, the manager of the labor camp herself was not the subject of any ongoing investigation. *Id.* Instead, the INS's enforcement petition stated that the subpoena sought testimony, books, papers and documents "in connection with the investigation *of suspected undocumented aliens at the camp*." *Id.* (emphasis added).

  Here, HSI's investigation principally targets the administrator of DHCS for possibly inducing illegal aliens with unsatisfactory immigration status to remain in the country by facilitating their receipt of federally funded non-emergency medical services

Case 2:25-mc-00083-JLS-SSC   Document 12   Filed 10/01/25   Page 11 of 16   Page ID #:162

to which they are not legally entitled. Unlike the subpoena in *Peters*, HSI's subpoena and the investigation it supports go beyond those Medi-Cal applicants whose immigration status reflects that they may have violated 8 U.S.C. §§ 1325 and 1326. Moreover, that HSI's investigation of DHCS and its Director may secondarily result in prosecutions of illegal aliens for immigration violations does not make the Subpoena improper. *See, e.g.*, *Couch v. United States*, 409 U.S. 322, 326 (1973) (recognizing a special agent's authority to issue an Internal Revenue summons in furtherance of a tax investigation with civil and possible criminal consequences). Accordingly, *Peters* does not foreclose the relief requested.

### E. The Subpoena Seeks Documents Which Are Reasonably Relevant To HSI's Investigation

Respondents challenge the purpose of the investigation, but "courts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (internal quotation marks omitted). "In defining relevance, courts generally defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *NLRB v. Kava Holdings, Inc.*, 2017 WL 3841780, at *3 (C.D. Cal. Aug. 8, 2017), report and recommendation adopted, 2017 WL 3841797 (C.D. Cal. Aug. 31, 2017); *see also Su*, 697 F. Supp. 3d at 1085 (granting petition to enforce administrative subpoena).[2]

As shown in the agency declaration submitted in support of the Petition, the Subpoena seeks applications for Medi-Cal benefits where the applicant did not answer "yes" to a single question: "Does this person have satisfactory immigration status?" If an

---

[2] Other Circuits are in accord. *See, e.g.*, *L.R.B. v. Am. Med. Response, Inc.*, 438 F.3d 188, 193 (2d Cir. 2006) ("The district court defers to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong, and, in turn, we affirm a district court's finding of relevancy unless that determination is clearly erroneous."); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) ("So long as the material requested 'touches a matter under investigation,' an administrative subpoena will survive a challenge that the material is not relevant.").

7

applicant answers "no" to that question and Respondent still facilitated the provision of nonemergency medical care and sought federal reimbursement for such services, then that is relevant to whether Respondent knowingly and willfully induced illegal aliens to remain in the country unlawfully in violation of section 1324. *See* Wang Decl. ¶¶ 3, 5. Any applications where an individual residing in California stated that they do not have satisfactory immigration status may also prove violations of Sections 1325 and 1326 of the INA, which requires the government to establish, among other things, that the defendant is an alien and is present in the United States without authorization. *See* Wang Decl. ¶ 5. Ultimately, Respondent has not shown that the agency's appraisal of relevancy as set forth in the Wang Declaration is wrong or in bad faith. *See Tabet v. U.S. S.E.C.*, 2012 WL 3986656, at *1 (S.D. Cal. Sept. 11, 2012) ("An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not … Under this standard, a declaration of a government official attesting to the commencement of investigation ... is sufficient to establish that the law enforcement inquiry is legitimate, and records are relevant.") (cleaned up).

HSI's investigation follows an "unprecedented" expansion of Medi-Cal to illegal aliens, an expansion with little accountability by DHCS's own admission. On January 1, 2024, DHCS expanded the Medi-Cal program to "allow adults ages 26 through 49 to qualify for full-scope Medi-Cal, regardless of immigration status."[3] Director Baass's Office shared a "FAQ" about the expansion, stating that "using Medi-Cal benefits (except for residential nursing home or mental health institution care) will NOT hurt an individual's immigration status."[4] Baass later described the expansion to individuals "regardless of immigration status" as "unprecedented" and part of the reason DHCS was

---

[3] DHCS website, available at: https://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Adult-Expansion.aspx (last accessed on Oct. 1, 2025); *see also* Dkt. 9-2, Declaration of Yingjia Huang, ¶ 13.

[4] DHCS FAQ available at: https://www.dhcs.ca.gov/services/medi-cal/eligibility/Documents/ENG-Medi-Cal-Expansion-FAQ.pdf (last accessed on Oct. 1, 2025).

facing a multi-billion shortfall in its budget. Cal. Assembly Budget Subcommittee No. 1 on Health, Tr. of Testimony by Dir. Baass (Mar. 17, 2025).[5]

By Respondent's own account, California received approximately 123,000 applications in July 2025. Opp'n at 7. Assuming that roughly the same number of applications are received each month, California would have received 6.4 million applications from June 5, 2021, to October 1, 2025 (i.e. approximately 1.5 million applications a year). Yet by Respondent's account, it would take them more than year to identify which of those applications answered "yes" to a single question on the application ("Does this person have satisfactory immigration status?"). California's position only supports the relevance of the requested records, and suggests a gross lack of accountability over millions of dollars in public benefits to millions of individuals based on their self-representation about their immigration status.[6] Indeed, just last year, *the same agency was found to have improperly claimed $52.7 million in federal Medicaid reimbursement for payments made on behalf of noncitizens with unsatisfactory immigration status*. See U.S. Dep't of Health and Human Servs, OIG Report (May 2024).[7] Accordingly, the documents requested are materially relevant to HSI's inquiry into the question whether Respondent induced illegal aliens to remaining in the United States by unlawfully facilitating their access to non-emergency medical services.

---

[5] Available at: https://calmatters.digitaldemocracy.org/hearings/258733 (last accessed on Oct. 1, 2025); see also Cal Matters, Ibarra, Ana B., *California's Medi-Cal shortfall hits $6.2 billion with 'unprecedented' cost increases* (Mar. 18, 2025), available at: https://calmatters.org/health/2025/03/medi-cal-shortfall-worsens/.

[6] Those benefits may—directly or indirectly—entail federal funds. See Paragon Health Institute, Paul Winfree and Brian Blase, *California's Insurance-Tax Shuffle: How Federal Money Ends Up Paying for Medicaid for Illegal Immigrants* (Mar. 12, 2025), available at: https://paragoninstitute.org/medicaid/californias-insurance-tax-shuffle-how-federal-money-ends-up-paying-for-medicaid-for-illegal-immigrants/

[7] Available at: https://oig.hhs.gov/documents/audit/9894/A-09-22-02004.pdf.

### F. Respondent's Other Arguments Fail

Respondent argues that the Subpoena is not enforceable because the Petition was filed after the preliminary injunction order entered in *California v. U.S. Dep't of Health & Hum. Servs.*, 2025 WL 2356224 (N.D. Cal. Aug. 12, 2025). Respondent essentially alleges that this action was filed to evade a preliminary injunction entered by a court in another district. But the facts of this case show otherwise. The Subpoena was issued on June 10, 2025, two months before the Northern District of California entered the *California* PI. *See* Wang Decl. ¶ 3. Likewise, the declaration supporting the Petition was executed on July 21, 2025, a month before the *California* PI. *Id.*

Nevertheless, *California* involved the State's challenge under the Administrative Procedure Act to an information sharing agreement between two federal agencies. *See California*, 2025 WL 2356224, at *2. It did not consider the question whether the solicitation of the information sought in the underlying Subpoena is within the scope of DHS's broad subpoena powers. And even in issuing the preliminary injunction, the *California* court acknowledged that "there does not appear to be anything categorically unlawful about DHS obtaining data from agencies like HHS for immigration enforcement purposes." *Id.* at *1. Here, DHS is investigating the administrator of the Medi-Cal program rather than seeking records solely for immigration enforcement as to removable illegal aliens. Wang Decl. ¶ 3.

Respondent also asserts that the Subpoena violates the APA. That argument similarly lacks merit. The APA is not a catchall statute to be used to complain that the federal government's actions are unfair. Instead, an APA claim must challenge a "final agency action." *See* 5 U.S.C. § 704. Agency action is final for purposes of APA review only if (1) it marks "the consummation of the agency's decision-making process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198-99 (9th Cir. 1998). Here, Respondent appears to argue, without any supporting case law, that the

10

issuance of a subpoena is a "final agency action." To the contrary, a subpoena is merely a tool for obtaining information as part of an investigation or litigation that is neither "the consummation of the agency's decision-making process" nor "one by which rights or obligations have been determined, or from which legal consequences flow." As one district court concluded, an "agencies' investigative actions are not final agency actions reviewable under the APA." *Ace Black Ranches, LLP v. United States Env't Prot. Agency*, 583 F. Supp. 3d 1313, 1322 (D. Idaho 2022) (citing cases) (explaining that the execution of an administrative search warrant is not a final agency action because it does not consummate the agency's decision-making process).

Finally, Respondent repeatedly claims that general privacy considerations are grounds to reject the Petition, but such concerns are routinely resolved through a protective order or confidentiality agreement, should Respondent demonstrate that one is warranted here. But at this stage, Respondent has not made a showing that she has made the requisite effort to search for and identify specific documents responsive to the Subpoena.

### IV. CONCLUSION

Having satisfied all the applicable legal standards, the United States respectfully requests an order from this Court requiring Respondent to comply with the Subpoena and begin rolling productions within 14 days or another deadline ordered by the Court.

Dated: October 1, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

　　　/s/ Paul (Bart) Green
PAUL (BART) GREEN
GAVIN L. GREENE
Assistant United States Attorneys

Attorneys for Petitioner
United States of America

## Certificate of Compliance with L.R. 11-6.2

The undersigned, counsel of record for the United States, certifies that this brief contains 3,617 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 1, 2025

　　　/s/ Paul (Bart) Green
PAUL (BART) GREEN