1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-mc-00083-JLS-SSC |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| MICHELLE BAASS, | |
| Respondent. | |

15    The Court submits this Report and Recommendation to the
16    Honorable Josephine L. Staton, United States District Judge, pursuant
17    to 28 U.S.C. § 636 and General Order 05-07 of the United States
18    District Court for the Central District of California.

19                              **REPORT**

20    The United States of America filed a petition to enforce a
21    Homeland Security Investigations administrative subpoena issued to
22    Michelle Baass, the Director of the California Department of Health
23    Care Services.  The subpoena seeks all applications for Medi-Cal
24    benefits for approximately the last five years where the applicant did
25    not confirm satisfactory immigration status.  Bound by Ninth Circuit
26    law, the Court recommends denying the petition.

27
28

## I

This subpoena-enforcement action arises from an investigation by Homeland Security Investigations (HSI), a division of Immigration and Customs Enforcement (ICE) within the Department of Homeland Security. HSI asserts that it is investigating violations of immigration laws and that the subpoena has been issued to Michelle Baass (Respondent or Director Baass), the Director of the California Department of Health Care Services (the Department), in support of that investigation. (ECF 1 at 7–8.)

Petitioner describes two distinct subjects of HSI's investigation and confirmed at the hearing that it is pursuing both subjects. First, HSI is investigating the presence of noncitizens[1] residing in the United States who may be violating either 8 U.S.C. §§ 1325 or 1326. (*Id.* at 4, 7–8.) The former penalizes improper entry by noncitizens, and the latter reentry by removed noncitizens. Second, HSI is investigating whether Director Baass is violating 8 U.S.C. § 1324(a)(1)(A)(iv)— penalizing persons who encourage or induce a noncitizen to come to, enter, or reside in the United States—by providing nonemergency

---

[1] Petitioner uses the term "alien" because that is a defined term in the statute. (ECF 1.) Under the Immigration and Nationality Act (INA), the term "alien" means "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). Following the lead of the U.S. Supreme Court and the Ninth Circuit, the Court uses the term "noncitizen" in place of "illegal alien" and "alien" unless those terms are part of a quotation. *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).

1  medical care through Medi-Cal to individuals who do not have

2  satisfactory immigration status.  (*Id.* at 4, 7–8; ECF 1-1 at 1.)

3      Medi-Cal is California's state Medicaid program.  (ECF 9 at 11.)

4  Medicaid is a cooperative federal-state program to assist low-income

5  individuals in obtaining healthcare.  (*Id.*)  In California, doctors and

6  hospitals provide emergency medical services to all, regardless of

7  immigration status.  (ECF 1 at 2.)  For individuals that cannot

8  otherwise pay, the costs of such services are reimbursed by the federal

9  government.  (*Id.*)  This includes reimbursement for emergency services

10  provided to individuals not lawfully residing in the United States.  (*Id.*;

11  ECF 9 at 11.)  *See* 42 U.S.C. § 1396b(v).  By contrast, federal law does

12  not authorize the use of federal funds to cover non-emergency

13  healthcare services provided to individuals without "satisfactory

14  immigration status."[2]  (ECF 1 at 2; ECF 9 at 11.)  However, as

15  discussed further below, Congress has provided under 8 U.S.C.

16  § 1621(d) that states may use their own funds to cover such services,

17  and California has elected to do so.  (ECF 9 at 11, 20.)

18      As part of its investigation, HSI issued and served an

19  administrative subpoena, Subpoena No. HSI-LA-2025-063746-001, on

20  Respondent on June 10, 2025.  (ECF 1 at 1–2.)  The subpoena seeks any

21  application for Medi-Cal benefits submitted between June 5, 2021, and

22  the present, where the applicant did not check "Yes" in response to the

23  question, "Do you have satisfactory immigration status?"  (*Id.* at 1; ECF

24  1-1 at 7, 9.)

25

26

27  [2] Respondent notes that "[l]acking [satisfactory immigration

28  status] for Medicaid eligibility purposes is not the same as lacking lawful immigration status."  (ECF 9 at 11–12.)

1    The Department, via email on June 16, 2025, rejected HSI's

2    subpoena "because it is ineffective to compel compliance by [the

3    Department], pursuant to *Peters v. United States*, 853 F.2d 692, 699

4    (9th Cir. 1988)[.]"  (ECF 1-1 at 11.)  Quoting *Peters*, the email stated

5    that "Congress has not specifically authorized the [Immigration and

6    Naturalization Service (INS)[3]] to issue blanket John Doe subpoenas nor

7    provided procedural safeguards for their issuance[.]"  (*Id.*)  The email

8    provided that the reference number pertaining to HSI's subpoena "is

9    now closed."  (*Id.*)  Respondent has not produced responsive

10   information.

11   On August 19, 2025, the United States of America (Petitioner)

12   initiated judicial proceedings, filing a petition to enforce HSI's

13   administrative subpoena.  (ECF 1.)  On September 3, 2025, the Court

14   ordered Petitioner to serve the petition and accompanying papers (ECF

15   1) on Respondent, along with the Court's order, and to file proof of

16   service.  (ECF 6.)  Respondent timely filed its opposition (ECF 9) and

17   Petitioner timely filed its reply (ECF 12).  The Court held a hearing on

18   the application on October 16, 2025, and the matter is now ready for

19   ruling.

20                                            **II**

21   The federal government exercises broad power over immigration.

22   *Arizona v. United States*, 567 U.S. 387, 394 (2012); U.S. Const. art. I,

23   § 8, cl. 4 (granting Congress the power to "establish an uniform Rule of

24   Naturalization").  Congress enacted the Immigration and Nationality

25   _____

26   [3] On March 1, 2003, the Immigration and Naturalization Service

27   (INS) ceased to exist as an agency and most of its functions were
     transferred to ICE.  *See Kawashima v. Holder*, 565 U.S. 478, 481 n.1

28   (2012).

4

1    Act (INA) to regulate the entry, presence, and removal of noncitizens.  8

2    U.S.C. § 1101 *et seq.*

3    The INA authorizes the Attorney General and any immigration

4    officer to issue administrative subpoenas under 8 U.S.C. § 1225(d)(4).

5    The INA provides for judicial enforcement of a subpoena issued under

6    § 1225(d)(4).  The Attorney General and immigration officers "may

7    invoke the aid of any court of the United States" in enforcing the

8    subpoenas, and district courts may order enforcement.  § 1225(d)(4)

9    (authorizing any district court within the jurisdiction of which

10   investigations are being conducted to issue an order requiring

11   compliance by "persons" with a subpoena in the event of neglect or

12   refusal to respond).

13   Judicial review of an administrative subpoena is "quite narrow."

14   *United States v. Golden Valley Elec. Ass'n* (*Golden Valley*), 689 F.3d

15   1108, 1113 (9th Cir. 2012).  Judicial enforcement of an administrative

16   subpoena turns on "(1) whether Congress has granted the authority to

17   investigate; (2) whether procedural requirements have been followed;

18   and (3) whether the evidence is relevant and material to the

19   investigation."  *Id.* (citation omitted); *see also McLane Co., Inc.*

20   (*McLane*) *v. EEOC*, 581 U.S. 72, 77 (2017) (explaining that an

21   administrative subpoena should be enforced unless "too indefinite,"

22   issued for an "illegitimate purpose," or unduly burdensome); *United*

23   *States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("Of course a

24   governmental investigation . . . may be of such a sweeping nature and

25   so unrelated to the matter properly under inquiry as to exceed the

26   investigatory power . . . [b]ut it is sufficient if the inquiry is within the

27   authority of the agency, the demand is not too indefinite and the

28   information sought is reasonably relevant.").  As discussed further

5

below, the Ninth Circuit has held that "[e]ven if these factors are shown by an agency, the subpoena will not be enforced if it is too indefinite or broad."  *Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988)

### III

Respondent argues that HSI lacks congressional authority to issue the subpoena to investigate Director Baass in her official capacity for encouraging or inducing noncitizens to come to the United States by offering them nonemergency medical care through Medi-Cal benefits.[4] The Court agrees[5] because it is the equivalent of criminally investigating the state itself which not only cannot be criminally prosecuted under § 1324(a)(1)(A)(iv), but is also expressly authorized by Congress to use its own funds to provide coverage of nonemergency medical services for noncitizens without satisfactory immigration status.

---

[4] Petitioner argues that because Respondent replied to the subpoena asserting a single objection based on *Peters*, Respondent waived all other objections.  (ECF 12 at 6 (citing *Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*, No. 8:18-cv-01776-PSG (JDEx), 2023 WL 2347387, at *3 (C.D. Cal. Feb. 13, 2023) and *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021)).)  The Court disagrees.  Petitioner's cited authority does not support its argument, as these cases describe notably different facts and circumstances related to discovery during litigation.  Further, Petitioner fails to explain how Respondent could have objected to whether HSI had authority to investigate or whether the requested information would be relevant to HSI's investigation without knowing what HSI was investigating.

[5] Petitioner confirmed at oral argument that the subpoena was issued to Director Baass in her official capacity.

## A

The Court recognizes that its role is "strictly limited" when an agency subpoena is attacked for lack of jurisdiction. *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009). As long as there is some plausible ground for jurisdiction, *i.e.*, unless jurisdiction is plainly lacking, the court should enforce the subpoena. *Id.* "The principle . . . that courts should not refuse to enforce an administrative subpoena when confronted by a fact-based claim regarding coverage or compliance with the law . . . has been consistently reaffirmed by the Supreme Court." *EEOC v. Karuk Tribe Hous. Auth.* (*Karuk*), 260 F.3d 1071, 1076 (9th Cir. 2001) (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 216 (1946); *Morton Salt Co.*, 338 U.S. at 652–53; and *United States v. Powell*, 379 U.S. 48, 57–58 (1964)). However, in limited circumstances, a party may challenge an administrative subpoena on the ground that it has a valid defense to a potential subsequent lawsuit "when the defense raised is 'jurisdictional' in nature—i.e., when the agency lacks jurisdiction over the subject of the investigation." *Id.* at 1076–77.

Thus, in *Karuk*, the Ninth Circuit concluded that an Indian tribe's challenge to a subpoena issued by the Equal Employment Opportunity Commission (EEOC) in connection with an age-discrimination investigation "falls into a narrow category of cases that is ripe for determination at the enforcement stage." *Id.* at 1077, 1083. *Karuk* held that the Age Discrimination in Employment Act (ADEA) does not apply to Indian tribes because Indian tribes enjoy a unique legal status as sovereigns. *Id.* at 1078, 1082 (explaining that the ADEA would only be applicable to Indian tribes if Congress explicitly so indicated, and that the statute was silent as to its applicability to Indian tribes). In doing

7

1  so, the court distinguished the facts of *Karuk* from other cases where
2  the subpoenaed parties "were clearly subject to the federal laws that
3  authorized the administrative investigations" and "could, under some
4  set of facts, be found in violation of federal law[.]" *Id.* at 1077–78.

5                                    **B**

6         Here, just as EEOC lacked jurisdiction over Indian tribes in
7  enforcing the ADEA in *Karuk*, HSI lacks jurisdiction to prosecute
8  California for violating § 1324(a)(1)(A)(iv).  There is no set of facts in
9  which a state could be prosecuted criminally for bringing in or
10  harboring noncitizens because states are sovereigns to which this
11  section of the INA does not, as a matter of law, apply.  Because an
12  action against a state agency employee in her official capacity, in this
13  context,[6] is effectively an action against the state itself, HSI lacks
14  jurisdiction to criminally prosecute Ms. Baass in her official capacity.

15        The criminal penalties outlined in this section of the INA apply to
16  "persons."  § 1324(a)(1)(A) ("Any person who . . . encourages or induces
17  an alien to come to, enter, or reside in the United States, knowing or in
18  reckless disregard of the fact that such coming to, entry, or residence is
19  or will be in violation of law . . . shall be punished[.]").  As used in
20  § 1324(a)(1)(A), "person" is defined under 8 U.S.C. § 1101(b)(3) as "an
21  individual or an organization."  The INA elsewhere defines
22  "organization" to "mean[], but is not limited to, an organization,
23  corporation, company, partnership, association, trust, foundation or
24  fund; and include[] a group of persons, whether or not incorporated,

25  _____

26        [6] Criminal prosecution by the federal government of a state for a
27  violation of § 1324(a)(1)(A)(iv) is distinguishable from, for example, civil
    rights actions brought by individuals against state employees acting in
28  their official capacity under 42 U.S.C. § 1983.

1  permanently or temporarily associated together with joint action on any
2  subject or subjects."  8 U.S.C. § 1101(a)(28).  The power of district courts
3  to enforce subpoenas issued under § 1225(d)(4) is also limited to issuing
4  orders requiring "persons" to comply.

5       "Person" is not presumed to apply to a sovereign, including
6  government agencies.  *Vt. Agency of Nat. Res. v. United States ex rel.*
7  *Stevens*, 529 U.S. 765, 780 (2000) (holding that a state agency was not a
8  "person" for purposes of *qui tam* liability under the False Claims Act
9  because nothing in the statute indicated states were subject to its
10 penalties).  This "longstanding interpretive presumption" can be
11 "disregarded only upon some affirmative showing of statutory intent to
12 the contrary."  *Id.* at 780–81.

13      The presumption applies, and is not overcome, in this case.
14 Neither the INA's definition of "person" nor anything else in the statute
15 suggests that Congress intended to subject states to its penalties.
16 Although the INA's definition of a "person" extends to private
17 organizations and groups of persons, the statute does not expressly
18 apply to states or state agencies.  That "person" applies to corporations
19 (or other private groups) in this context does not affect application of
20 the presumption that "person" does not include the sovereign because
21 "the presumption with regard to corporations is just the opposite of the
22 one governing here: they are presumptively *covered* by the term
23 "person[.]"  *Id.* at 782 (emphasis in original); *see also* 1 U.S.C. § 1 ("In
24 determining the meaning of any Act of Congress, unless the context
25 indicates otherwise . . . the words 'person" and 'whoever' include
26 corporations, companies, associations, firms, partnerships, societies,
27 and joint stock companies, as well as individuals[.]").

28

1    While not binding in this case, the Court notes that the Second

2    Circuit applied the presumption in concluding that § 1324 (the same

3    section under which HSI is investigating Director Baass) "applies to

4    'person[s],' not government entities." *Kearns v. Cuomo*, 981 F.3d 200,

5    212 (2d Cir. 2020). *Kearns* dismissed a suit challenging the

6    constitutionality of a state law for lack of subject matter jurisdiction

7    because petitioner (a state agency employee) failed to demonstrate a

8    sufficiently concrete threat of criminal prosecution in his individual or

9    official capacity under the INA. *Id.*

**C**

11    The language of the INA does not make clear that Congress

12    intends to alter the constitutional balance with respect to criminal

13    investigation and prosecution of the state by the federal government.

14    The Supreme Court has recognized, in the context of determining

15    whether "person" applies to sovereigns, "the ordinary rule of statutory

16    construction" that "if Congress intends to alter the usual constitutional

17    balance between States and the Federal Government, it must make its

18    intention to do so unmistakably clear in the language of the statute."

19    *Vt. Agency of Nat. Res.*, 529 U.S. at 787 (citation omitted) (recognizing

20    also "the doctrine that statutes should be construed so as to avoid

21    difficult constitutional questions"); *see also Gregory v. Ashcroft*, 501 U.S.

22    452, 460 (1991). The Supreme Court has also required clarity with

23    respect to the breadth of INA's subpoena authority, declining to imply

24    its extension without clear congressional indication. *See United States

25    v. Minker*, 350 U.S. 179, 190 (1956) (interpreting an earlier version of

26    the INA's subpoena authority with essentially the same language and

27    concluding that such authority did not extend over persons who are the

28

1   subject of denaturalization investigations because Congress did not

2   clearly indicate so).

3       In contrast with congressional silence on whether the INA

4   authorizes criminal prosecution of states under § 1324(a)(1)(A)(iv),

5   Congress has expressly indicated that states through enactment of state

6   law are permitted to provide state benefits to noncitizens who are

7   otherwise ineligible. *See* § 1621(d).[7]  California's coverage of

8   nonemergency medical services for noncitizens without satisfactory

9   immigration status, as carried out by Director Baass through the Medi-

10  Cal program, is expressly permitted under federal law.  The express

11  authority of California to provide such benefits further supports the

12  Court's conclusion that HSI lacks congressional authority to investigate

13  whether Director Baass violated § 1324(a)(1)(A)(iv), because there is no

14  set of facts under which a state administering a lawful program under

15  § 1621(d) could be criminally prosecuted for doing so under

16  § 1324(a)(1)(A)(iv).

17                              **IV**

18      Respondent argues HSI's second investigatory subject—the

19  investigation of individuals who indicated less than satisfactory

20  immigration status in their Medi-Cal application to determine whether

21  they have violated §§ 1325 or 1326— is foreclosed by *Peters*.  853 F.2d

22  692.  The Court starts with the plain language of the statute.

23

24  —————————————

25      [7] The statute states: "[a] State may provide that an alien who is
    not lawfully present in the United States is eligible for any State or
26  local public benefit for which such alien would otherwise be ineligible
    under subsection (a) only through the enactment of a State law after
27  August 22, 1996, which affirmatively provides for such eligibility."
28  § 1621(d).

**A**

HSI's subpoena power is set forth in 8 U.S.C. § 1225.  Subsection (d) is titled "Authority Relating to Inspections" and subsection (d)(4) is titled "Subpoena Authority" and provides, in relevant part, that:

> (A) The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or *concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service*, and to that end may invoke the aid of any court of the United States.

§ 1225(d)(4) (emphasis added).

The Supreme Court has held that the inclusion of the italicized language was a "comprehensive addition" that expanded the agency's subpoena power.[8]  *Minker*, 350 U.S. at 184–85.

---

[8] The Supreme Court in *Minker* considered an earlier version of the INA's subpoena authority under § 1225, which at that time provided, in pertinent part: "The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subp[o]ena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or *concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service*, and to that end may invoke the aid of any court of the United States."  8 U.S.C. § 1225(a) (1952) (emphasis added).  The relevant language remains substantially the same, although "this Act" has been amended to "this chapter," referring to Title 8, Chapter 12, which is where the INA is codified.

**B**

The Ninth Circuit, however, limited the scope in *Peters*.  853 F.2d 692.  In *Peters*, the Immigration and Naturalization Service (INS) issued a subpoena to the manager of a labor camp in connection with a general criminal investigation of a group of unnamed tenants at the camp who may have been undocumented noncitizens.  *Id.* at 693.  The labor camp provided housing for approximately 150 families engaged in farm labor.  *Id.* at 694.  It received federal funding along with a requirement to maintain tenant records about United States residency, employment, salary, unearned income, vehicles, and prior tenancy.  *Id.* An INS criminal investigator first requested to inspect the files in connection with an INS program aimed at preventing undocumented noncitizens from receiving federally subsidized housing.  *Id.*  After his request was refused, INS issued a subpoena "to give testimony in connection with 'a criminal investigation proceeding' relating to 'undocumented aliens residing at the Walla Walla Labor Camp concerning their immigration status in the United States'" and "further ordered [the manager] to bring 'all records relating to persons residing at the Walla Walla Labor Camp including but not limited to Preliminary Applications for Farmworkers Housing, Applications for Farmworkers Housing, Contracts for Farmworkers Housing, any other documents that would identify those persons residing at the Walla Walla Labor Camp.'"  *Id.*  The camp refused to comply, prioritizing residents' privacy concerns over the criminal investigation.  *Id.*

As here, the agency was forced to initiate enforcement proceedings in the district court.  *Id.*  The district court ruled in the agency's favor citing the broad subpoena power under the statute.  *Id.*  As the Ninth Circuit framed it, the district court was "nonetheless troubled that the

1    INS could issue a subpoena seeking information about a group of

2    unknown individuals without a showing that it was not conducting a

3    mere fishing expedition" and thus, analogizing to the ability of the

4    Internal Revenue Service (IRS) to issue so called "John Doe" summons,

5    the district court required the agency to demonstrate that it possessed a

6    reasonable basis for believing that camp residents were violating the

7    immigration laws.  *Id.*  The agent then produced an affidavit stating

8    that he had arrested approximately 300 undocumented noncitizens at

9    the camp in his 11-year tenure, including 19 in 1984, and that he had

10    received numerous complaints regarding "illegals" at the camp in 1984

11    through 1985.  *Id.* at 695.  Having imported the statutory safeguards

12    from the tax context (and thereby contracting INS's statutory subpoena

13    power) and having found that the immigration agency had met them,

14    the district court ordered compliance with the subpoena.  *Id.*

15        The Ninth Circuit reversed.  The court acknowledged "INS's

16    concededly broad subpoena and investigatory authority" under § 1225

17    but was "reluctant to assume the existence of the power to issue third-

18    party subpoenas directed at unidentified targets where Congress ha[d]

19    not provided for them specifically, nor provided procedural safeguards."

20    *Id.* at 696 (interpreting an earlier version of the INA's subpoena

21    authority, 8 U.S.C. § 1225(a) (1952), which is now found, essentially

22    unchanged, at § 1225(d)(4)).  The court concluded that "it was improper

23    to *expand* the INS' subpoena power by analogizing from IRS summons

24    law without a statutory basis other than INS subpoena power being

25    broad."  *Id.* at 699 (emphasis added).  The court also made clear that its

26

27

28

ruling turned not on the Fourth Amendment[9] but on its interpretation of the statute itself. *Id.* at 700 n.9 ("Because we hold that the INS was without authority to issue the instant subpoena, we need not reach the fourth amendment issue."); *see also Golden Valley*, 689 F.3d at 1115 (discussing *Peters* and stating "[w]e have quashed a 'John Doe' administrative subpoena as overly broad where the governing statute did not authorize the agency's use of group subpoenas.").

Bound by the Ninth Circuit's holding that "section 1225[] does not authorize the . . . issu[ance of] a blanket John Doe subpoena where the targets of a general investigation are unknown," *Peters*, 853 F.3d at 700, the Court may not enforce HSI's subpoena to investigate individuals who indicated less than satisfactory immigration status in their Medi-Cal application to determine whether they have violated §§ 1325 or 1326.

---

[9] The Supreme Court has applied Fourth Amendment reasonableness requirements to administrative subpoenas. *See, e.g., McLane*, 581 U.S. at 84 ("To be sure, we have described a subpoena as a 'constructive search' . . . and implied that the Fourth Amendment is the source of the requirement that a subpoena not be 'too indefinite[.]'" (citation modified)); *See v. City of Seattle*, 387 U.S. 541, 544 (1967) ("It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."); *Walling*, 327 U.S. at 208 ("The gist of the [Fourth Amendment] protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.").

## C

Petitioner's attempts to distinguish *Peters* fails.

### 1

Petitioner points to the fact that the subpoena in *Peters* sought information from the manager of the labor camp, who was not the subject of a criminal investigation.  (ECF 1 at 8–11; ECF 12 at 9–11.)  Here, Petitioner argues, the subpoena was issued to Director Baass, who is a target of HSI's investigation.

However, as explained above, Director Baass is not a proper target, and regardless, as explained below, is not the only target of HSI's investigation.  Petitioner repeatedly claims that it seeks the requested information as part of its investigation into individuals residing illegally in the United States who may be violating §§ 1325 and 1326, but whose identities remain unknown to HSI.  (ECF 1 at 4, 7–8.)  Petitioner maintained at oral argument on October 16, 2025, that the subpoena was issued, in part, related to HSI's investigation targeting such unidentified and unknown individuals.  Petitioner fails to explain how, under *Peters*, HSI has authority under § 1225(d)(4) to subpoena the requested information in support of this general criminal investigation of individuals who may be violating immigration laws.[10]

### 2

Petitioner also argues that HSI's subpoena is analogous to the subpoena issued by the Drug Enforcement Administration (DEA) in *Golden Valley*, the enforcement of which was upheld by the Ninth Circuit.  There, the DEA sought records from an electricity cooperative for the residences of three customers which were suspected to be

---

[10] Petitioner also argues that *Peters* was wrongly decided.  (ECF 1 at 8–10.)  That argument is preserved for appeal.

involved in the manufacture and distribution of controlled substances. *Golden Valley*, 689 F.3d at 1111. The Ninth Circuit rejected the electricity cooperative's argument that this subpoena was an impermissible "group subpoena," distinguishing the DEA's "narrow and specific" subpoena from the INS's "broad and indefinite" subpoena in *Peters*. *Id.* at 1115.

Here, unlike the DEA's subpoena issued as part of an investigation targeting unknown individuals at three identified residences, HSI's subpoena seeks an indefinite number of Medi-Cal applications as part of its broad criminal investigation into potential immigration violations committed by an unknown number of unidentified individuals.[11] The distinguishing principle, *Peters* tells us, is that "[a]n administrative subpoena may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters*, 853 F.2d at 700. While the fisherman here may have cast his line more precisely than in *Peters* by targeting applicants who self-identified as lacking satisfactory immigration status, *Peters* has effectively closed the waters, and this Court leaves it to the Ninth Circuit to set the catch limits, if any.

***

Because both subjects of its investigation are foreclosed, the petition must be denied.[12]

_____

[11] Respondent states that "[m]any thousands of applications are potentially responsive to the subpoena, and most would include private and personally identifying information about many more thousands of individuals who may not have applied for Medi-Cal but share a home with an applicant who lacks 'satisfactory immigration status.'" (ECF 9 at 16.)

[12] Respondent advances several other arguments to challenge judicial enforcement of the subpoena. (ECF 9 at 21–22, 25–29.) As

**RECOMMENDATION**

For the reasons above, IT IS RECOMMENDED that the district judge issue an order: (1) accepting and adopting this Report and Recommendation; and (2) denying the petition for enforcement of the subpoena.

DATED: March 4, 2026

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

---

enforcement should be denied because Petitioner lacks authority to issue the subpoena, the Court does not reach those arguments.